IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| AMERICAN FARM BUREAU FEDERATION, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> VIRGINIA FARM BUREAU MUTUAL, *et al.*, <br><br> Defendants. | Case No. 1:24-cv-0213-PTG-LRV |

## REPORT AND RECOMMENDATION

This matter is before the Court on the Motion for Default Judgment (Dkt. No. 22) filed by Plaintiffs American Farm Bureau Federation, Virginia Farm Bureau Federation, and Virginia Farm Bureau Mutual Insurance Company. Pursuant to 28 U.S.C. § 636(b)(1)(C), the undersigned files this Report and Recommendation, a copy of which will be provided to all interested parties.

I. **Procedural Background**

On February 13, 2024, Plaintiffs filed this action for trademark infringement, trademark dilution, and unfair competition under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, and Virginia statutory and common law. (Dkt. No. 1.) Plaintiffs' claims arise from Defendants' use of Plaintiff American Farm Bureau Federation's ("AFBF") federally registered FARM BUREAU, VIRGINIA FARM BUREAU, FARM BUREAU INSURANCE, and VIRGINIA FARM BUREAU MUTUAL INSURANCE COMPANY trademarks ("the FARM BUREAU Marks"), in connection with fraudulent online activities and business registrations (specifically, Virginia Farm Bureau Mutual (Legal Name, Entity ID: 11569684), Virginia Farm Bureau Mutual Ins c/o Margaret Walsh

(Fictitious Name, Entity ID: 11569684), Virginia Farm Bureau Mutual Ins c/o Margaret Walsh (Fictitious Name, Entity ID: 11519457), Virginia Farm Bureau Mutual Ins Corp c/o Margaret Walsh (Legal Name, Entity ID: 11563590) (collectively, "the Unauthorized Virginia Farm Bureau Entities")). (*Id.*) Defendant Virginia Farm Bureau Mutual Ins c/o Margaret Walsh was served on February 22, 2024, and Defendants Virginia Farm Bureau Mutual and Virginia Farm Bureau Mutual Ins Corp c/o Margaret Walsh were served on March 4, 2024. (*See* Dkt. Nos. 13–15.)

Pursuant to Federal Rule of Civil Procedure 12(a)(1), Defendants' responsive pleadings were due on March 14 and March 25, 2024, respectively. (*See id.*) Defendants failed to file answers or otherwise respond to Plaintiffs' complaint, and on April 9, 2024, the Clerk entered a default against Defendants. (Dkt. No. 17.) On June 28, 2024, the undersigned held a hearing on Plaintiffs' Motion for Default Judgment, at which counsel for Plaintiffs appeared. No representative appeared on behalf of Defendants. (*See* Dkt. No. 28.) This matter is now ripe for disposition.

## II. Factual Background

Pursuant to the complaint, the following facts have been established.[1] AFBF is a non-profit, tax-exempt 501(c)(5) organization that works to improve the lives of America's farmers and ranchers, and their communities. (Dkt. No. 1 ¶ 12.) AFBF has a federated structure, with 50 independent state Farm Bureau member organizations across the country, plus Puerto Rico. (*Id.*) Those state Farm Bureau organizations, in turn, have member county Farm Bureau organizations

---

[1] *See GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) ("Upon default, facts alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts as alleged state a claim." (citing *Anderson v. Found. for Advancement, Educ. & Emp. of Am. Indians*, 187 F.3d 628 (4th Cir. 1999) (unpublished table decision))).

2

and individual Farm Bureau members. (*Id.*) Through its federated structure, AFBF is local, county, state, national, and international in its scope and influence. (*Id.*)

AFBF has used the FARM BUREAU name and marks to identify itself and its various service offerings for over a century. (*Id.* ¶ 13.) AFBF seeks to serve the needs of its members and their families regarding advocacy on rural issues, public service and outreach, agricultural literacy, and initiatives that ensure our nation's food supply while stewarding our natural resources. (*Id.*) Today, AFBF is the nation's largest general farm organization, representing nearly six-million member families, and is the leading advocate for America's farmers and ranchers. (*Id.*)

AFBF has obtained several incontestable federal trademark registrations comprised of and/or containing FARM BUREAU (shown below). (*Id.* ¶ 22 & Ex. A.)

| Mark | Reg. No. | Services | Reg. Date |
|---|---|---|---|
| VIRGINIA FARM BUREAU | 4,077,440 | General farmers organization services, namely, promoting the business, economic, social, educational, political, and other interests of farm and rural persons, ranchers, and agriculture. | 12/27/2011 |
| VIRGINIA FARM BUREAU MUTUAL INSURANCE COMPANY | 4,084,275 | Insurance underwriting services in the fields of personal automobile, commercial automobile, homeowner, farm, commercial property, commercial casualty, inland marine and workers compensation; insurance brokerage services; and insurance agency services. | 1/10/2012 |
| FARM BUREAU | 594,500 | Periodicals published monthly or from time to time. | 8/31/1954 |
| FARM BUREAU | 1,612,451 | Indicating membership in a national organization dedicated to the purpose of promoting, protecting and representing the business, economic and social and educational interests of the farmers and ranchers of the United States, and to the purpose of developing agriculture. | 9/4/1990 |

3

| | 1,874,169 | Insurance services; namely, insurance underwriting, insurance agency, insurance administration, and insurance brokerage services. Promoting, protecting and representing the business, economic, social educational and other interests of farmers and ranchers and for developing agriculture. | 1/17/1995 |
|---|---|---|---|
| FARM BUREAU | 2,482,573 | Interactive communication services, namely, providing late breaking news, providing access to and administering other computer networks providing for the availability, transfer, exchange, and dissemination of a wide variety of information, including a homepage on global or other computer networks, linkage services to homepages and databases on global and other computer networks. | 8/28/2001 |
| FARM BUREAU | 2,513,062 | Savings and loan services; banking services provided by a bank holding company and a savings and loan holding company; saving bank services, mortgage lending, and credit card services; depository services, namely accepting FDIC-insured deposits and providing deposit accounts; payment services, namely automated clearinghouse, wire-transfer, and checking services; providing secured and unsecured loans; bank funding services; banking. | 11/21/2000 |
| FARM BUREAU | 3,848,528 | Promoting public awareness of the affordability and nutritional value of food in the United States. | 9/14/2010 |
| FARM BUREAU INSURANCE | 1,622,828 | Insurance underwriting, reinsuring, brokerage and agency services. | 11/13/1990 |

Through their membership in AFBF, each state and county Farm Bureau organization is licensed to use the FARM BUREAU trademark. (*Id.* ¶ 14.) The AFBF Board of Directors also grants permission for the licensing of the FARM BUREAU trademark for use by certain affiliate companies controlled by state or county Farm Bureau organizations. (*Id.*) Plaintiff Virginia Farm Bureau Federation (VFBF) is licensed to use these marks. (*Id.* ¶ 22.)

4

AFBF and its member Farm Bureau organizations have long publicized their FARM BUREAU-related activities, products, and services and collectively spend significant amounts of money each year advertising and promoting them. (*Id.* ¶ 29.) For example, The Virginia Farm Bureau News was published monthly from 1941 to at least 1986. (*Id.* ¶ 30.) Additionally, the Farm Bureau organizations, including VFBF and Virginia Farm Bureau Mutual Insurance Company ("VFBMIC"), have for many years advertised their services through a variety of official websites, including <fb.org>, <vafb.com>, <farmbureau.bank>, <farmbureaubank.com>, <coloradofarmbureau.com>, <floridafarmbureau.org>, <idahofarmbureauinsurance.com>, <infarmbureau.org>, <iowafarmbureau.com>, <lafarmbureau.com>, <mainefarmbureau.us>, <mdfarmbureau.com>, <farmbureauinsurance-mi.com>, <okfarmbureau.org>, <texasfarmbureau.org>, <tnfarmbureau.org>, <utahfarmbureau.org>, <slofarmbureau.org>, <sdfarmbureau.org>, <sacfarmbureau.org>, <hcfarmbureau.org>, <farmbureauvc.com>, <ocfarmbureau.org>, and <beafarmbureauagent.com>. (*Id.* ¶ 31.)

AFBF offers member discounts on farm equipment and machinery, travel, and home and business needs through partnerships with some of the nation's most famous brands, such as Caterpillar, John Deere, Avis, Budget, Yamaha, Ford, and Wyndham Hotels and Resorts. (*Id.* ¶ 32.) As a result of their distinctive nature and strength, extensive public exposure, significant commercial success, widespread advertising, and long-standing and extensive publicity, the FARM BUREAU and FARM BUREAU family of marks have become well known and famous. (*Id.* at p.8 ¶ [3]3.)

Defendants incorporated the Unauthorized Virginia Farm Bureau Entities with the Virginia State Corporation Commission. (*Id.* ¶ 35.) These entities incorporate AFBF's federally

registered marks in their entirety without Farm Bureau's permission. (*Id.*) Two of these entities' statuses are currently listed as "inactive" on the Virginia State Corporation Commission website: Virginia Farm Bureau Mutual and Virginia Farm Bureau Mutual Ins Corp c/o Margaret Walsh (both with Entity ID: 11569684) and Virginia Farm Bureau Mutual Ins Corp c/o Margaret Walsh (Entity ID: 11563590). (*Id.*) Defendants filed Virginia Farm Bureau Mutual Ins c/o Margaret Walsh (both Entity IDs: 11569684 and 11563590) as Virginia fictitious business name registrations. (*Id.*)

The only physical addresses for the Unauthorized Virginia Farm Bureau Entities listed on the Virginia State Corporation Commission website are: (1) 2567 Chain Bridge Road, #2E, Vienna, VA 22181; (2) 6100 Talavera Court, Alexandria VA 22310; and/or (3) P.O. Box 27552, Richmond, VA 23261. (*Id.* ¶ 36.) All of these addresses are false addresses. (*Id.* ¶ 41.) For example, the P.O. Box 27552, Richmond, VA 23261 address listed for Defendant Virginia Farm Bureau Mutual Ins Corp c/o Margaret Walsh (Entity ID: 11563590) is the same Richmond, VA P.O. Box used by Plaintiff VFBMIC. (*Id.* ¶ 37.)

Before commencing this action, Plaintiffs AFBF and VFBF sent demand letters to the other two addresses listed for the Unauthorized Virginia Farm Bureau Entities, objecting to these business registrations and asking that the entities be dissolved. (*Id.* ¶ 38.) AFBF and VFBF's letter sent via Federal Express to 6100 Talavera Court, Alexandria, VA was answered by a retired Brigadier General of the United States Air Force, who confirmed receipt of AFBF and VFBF's Federal Express package, but explained that he had never registered such an entity, was also the victim of fraud, and that the email listed on the registration documents was a variation of one of his genuine email addresses. (*Id.*) AFBF and VFBF's second letter sent via Federal Express to 2567 Chain Bridge Road, #2E, Vienna, VA was returned as undeliverable. (*Id.* ¶ 39.) To date,

Plaintiffs have not received a response to any demand letters from the actual registrants of the Unauthorized Virginia Farm Bureau Entities. (*See* Dkt. No. 22 at 9–10.)

In addition to providing fraudulent contact information in its business filings, the Unauthorized Virginia Farm Bureau Entities have been established, among other things, to assist in fraudulent banking activities. (Dkt. No. 1 ¶ 42.) At least one of these entities opened a bank account, re-routed a check intended for VFBMIC, and attempted to deposit it. (*Id.*) Additionally, in furtherance of their fraudulent scheme, Defendants operate a website at <vfbmins.com>, which identifies its physical address as 2567 Chain Bridge Road, Vienna, VA 22181—the same address used on at least two of Defendants' company registration documents listed on the Virginia State Corporation Commission website. (*Id.* ¶¶ 8, 43.) This online location purports to be the website of "Virginia Farm Bureau Mutual International Network Services Company" and claims to supply equipment and feed for farmers (*id.* ¶ 43):



In response to these fraudulent activities, Plaintiffs contacted the Virginia State Corporation Commission, asking it to administratively dissolve or revoke the Unauthorized Virginia Farm Bureau Entities. (Dkt. No. 1 ¶ 44.) The Virginia State Corporation Commission stated it could not act without Court order. (*Id.*)

### III. Legal Standard

Federal Rule of Civil Procedure 55 provides that default judgment may be entered when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a)–(b). Although a defaulting defendant is deemed to have admitted the well-pleaded allegations of fact set forth in the complaint, *see* Fed. R. Civ. P. 8(b)(6), "conclusions of law or allegations regarding liability that are not well-pleaded" are not deemed admitted. *Balt. Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 540 (D. Md. Feb. 2, 2011) (quoting *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (internal quotation marks omitted)); *see JTH Tax, Inc. v. Grabert*, 8 F. Supp. 3d 731, 736 (E.D. Va. 2014). Before entering default judgment, therefore, the Court must determine whether the facts, as alleged in Plaintiffs' complaint, state a claim for relief. *JTH Tax*, 8 F. Supp. 3d at 736 (citing *Anderson v. Found. for Advancement, Educ. & Emp. of Am. Indians*, 187 F.3d 628 (4th Cir. 1999) (unpublished table decision)).

### IV. Jurisdiction and Venue

Before entering default judgment, the Court must have subject-matter jurisdiction, personal jurisdiction over the Defendants, and venue must be proper. Upon review, the undersigned finds that this Court has subject-matter jurisdiction over Plaintiffs' federal law claims because they arise under federal statute (the Lanham Act) and there is also supplemental jurisdiction over Plaintiffs' related state law claims for trademark infringement and unfair competition based on the same alleged actions of Defendants. *See* 28 U.S.C. §§ 1331, 1367. Additionally, there is personal jurisdiction over Defendants because they have purposefully availed themselves of the laws of Virginia by registering fraudulent corporate entities with the Virginia State Corporation Commission and selling and offering for sale its infringing products and services in Virginia. (*See*

Dkt. No. 1 ¶¶ 9–10, 35–43); *see, e.g., Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (personal jurisdiction exists over corporation in place of incorporation); *see also* Va. Code Ann. § 801-328.1 (Virginia long-arm statute).

Finally, venue is proper pursuant to 28 U.S.C. § 1391(b) and (c) because Defendants reside in this District and a substantial part of the events giving rise to Plaintiffs' claims occurred in this District—e.g., Defendants' use of false addresses located within this District. (*See* Dkt. No. 1 ¶¶ 11, 36.)

## V. Service of Process

Pursuant to Federal Rule of Civil Procedure 4(h)(1), corporate entities like Defendants may be served in the United States either (A) in the manner prescribed in Rule 4(e)(1) for serving an individual, or (B) by delivering a copy of the summons and complaint to an officer, manager, or general agent, or any other agent authorized by law to receive service of process. Under Rule 4(e)(1), a defendant may be served by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located"—i.e., Virginia. Fed. R. Civ. P. 4(e)(1).

As state above, Defendants have provided false addresses for the Unauthorized Virginia Farm Bureau Entities. (Dkt. No. 1 ¶ 41.) Accordingly, Plaintiffs were unable to serve Defendants via personal service on Defendants' registered agent. Pursuant to Virginia Code § 13.1-637(B), "whenever [a corporation's] registered agent cannot with reasonable diligence be found at the registered office, then the clerk of the Commission shall be an agent of the corporation upon whom service may be made." Here, Plaintiffs filed affidavits of service showing that service was made on the clerk of the Virginia State Corporation Commission, in accordance with Virginia law. (Dkt. Nos. 13–15.) Accordingly, service is proper.

## VI. Grounds for Entry of Default

In accordance with Federal Rule of Civil Procedure 12(a), Defendants' answer or other response to the complaint was due within twenty-one (21) days after service—i.e., by March 14 or March 25, 2024. No responsive pleading has been filed, and the time for doing so has since expired. On April 5, 2024, Plaintiffs filed a request for entry of default against Defendants (Dkt. No. 16), which the Clerk of Court entered on April 9, 2024 (Dkt. No. 17). Accordingly, because service was proper and Defendants have not responded, the Clerk of Court properly entered the default against Defendants.

## VII. Liability

Because a default has been entered, the factual allegations in Plaintiffs' complaint are deemed admitted. *See* Fed. R. Civ. P. 8(b)(6); *JTH Tax, Inc.*, 8 F. Supp. 3d at 736. In this case, Plaintiffs are pursuing claims for trademark infringement, false designation of origin, passing off, unfair competition, and trademark dilution under the Lanham Act and Virginia law. Upon review, the undersigned recommends a finding that Plaintiffs have demonstrated that they are entitled to relief as to all claims.

### A. Claims for Trademark Infringement, False Designation of Origin, Passing Off, and Unfair Competition

In Counts 1 and 2 and Counts 4 through 6 of the complaint, Plaintiffs assert claims for trademark infringement under 15 U.S.C. § 1114(1)(a) and Virginia Code § 59.1-92.12; trademark infringement, false designation of origin, passing off, and unfair competition under 15 U.S.C. § 1125(a)(1)(A); unfair competition under Virginia Code § 59.1-196 *et seq.*; and Virginia common law trademark infringement and unfair competition. (*See* Dkt. No. 1.)

A party is liable for trademark infringement under the Lanham Act when that party, without the consent of the trademark owner, uses a mark in commerce "in connection with the sale, offering

10

for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). To establish a claim for trademark infringement, Plaintiffs must prove that (1) they own a valid mark, (2) Defendants have used the mark, or an imitation of it, in commerce and in connection with the sale, offering for sale, distribution, or advertising of Defendants' goods without Plaintiffs' authorization, and (3) Defendants' use of the mark is likely to confuse consumers. *Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 152 (4th Cir. 2012). Regarding ownership, registration of a mark on the principal Register is "prima facie evidence . . . of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce." 15 U.S.C. § 1115(a). Additionally, the Fourth Circuit has created a nine-factor test to determine likelihood of consumer confusion: "(1) the strength or distinctiveness of the plaintiff's mark as actually used in the marketplace; (2) the similarity of the two marks to consumers; (3) the similarity of the goods or services that the marks identify; (4) the similarity of the facilities used by the markholders; (5) the similarity of advertising used by the markholders; (6) the defendant's intent; (7) actual confusion; (8) the quality of the defendant's product; and (9) the sophistication of the consuming public." *Rosetta Stone*, 676 F.3d at 153.

The standard for trademark infringement under 15 U.S.C. § 1114 is "largely the same" as the test for unfair competition under 15 U.S.C. § 1125. *Glob. Inheritance, Inc. v. Glob. Inheritance, Inc.*, 1:22CV0353 (AJT/JFA), 2022 WL 17813712, at *3 (E.D. Va. Sept. 30, 2022), *report and recommendation adopted*, 122CV00353AJTJFA, 2022 WL 17811393 (E.D. Va. Dec. 19, 2022). The same standard also applies to Virginia statutory and common law trademark claims. *See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 930 n.10 (4th Cir. 1995) (noting that "[t]he test for trademark infringement and unfair competition under the

Lanham Act is essentially the same as that for common law unfair competition under Virginia law because both address the likelihood of confusion as to the source of the goods or services involved"). Thus, claims for trademark infringement and unfair competition under federal and Virginia statutory and common law apply the same test as under the Lanham Act, as described above. *See Simply Wireless, Inc. v. T- Mobile US, Inc.*, 638 F. Supp. 3d 644, 663–64 (E.D. Va. 2022) (finding Lanham Act and Virginia law claims "may be considered together, because '[t]he test for trademark infringement and unfair competition under the Lanham Act is essentially the same as that for common law unfair competition under Virginia law.'" (quoting *Lone Star Steakhouse*, 43 F.3d at 930 n.10)).

Here, Plaintiffs have established all the elements of their claims for trademark infringement and unfair competition. First, Plaintiff AFBF owns valid and subsisting federal trademark registrations for the FARM BUREAU Marks, and VFBF is licensed to use those marks. (Dkt. No. 1 ¶ 22 & Ex. A.) As stated above, registration of a trademark with the U.S. Patent and Trademark Office serves as conclusive or prima facie evidence of the validity of the mark. *See* 15 U.S.C. § 1115(a). Second, Plaintiffs have demonstrated that Defendants used its registered marks without Plaintiffs' permission. As alleged in the complaint, Defendants have incorporated Plaintiff AFBF's federally registered marks in their entirety names without permission and registered those entities with the Virginia State Corporation Commission using false information. (*Id.* ¶ 35.)

Third, Plaintiffs have shown that Defendants engaged in the unauthorized use of the FARM BUREAU Marks in a manner that is likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of Defendants, their products/services, and/or their commercial activities by or with Plaintiffs. (*Id.* ¶¶ 35–43.) Specifically, Defendants' entity

12

names incorporate Plaintiffs' marks in full, Defendants have operated a website at website at <vfbmins.com>, which purports to be the website of "Virginia Farm Bureau Mutual International Network Services Company" and claims to supply equipment and feed for farmers, and Defendants have also fraudulently opened a bank account, re-routed a check intended for VFBMIC, and attempted to deposit it. (*Id.* ¶¶ 42–43.) Thus, considering the factors set forth in *Rosetta Stone*, 676 F.3d at 153, Plaintiffs have shown that Defendants knowingly and willfully used Plaintiffs' marks without authorization, and that consumers are likely to be confused by Defendants' use of the marks. (*See id.* ¶¶ 47–48.) Accordingly, because Plaintiffs' complaint properly establishes all the elements of their trademark infringement and unfair competition claims, and Plaintiffs are entitled to default judgment on those claims.

**B. Claim for Trademark Dilution**

In Count 3, Plaintiffs assert a claim for trademark dilution under 15 U.S.C. § 1125(c). To state a claim for dilution, Plaintiffs must show: (1) they "own[ ] a famous mark that is distinctive"; (2) Defendants have "commenced using a mark in commerce that is allegedly diluting the famous mark"; (3) that a similarity between the Defendants' mark and the famous mark "gives rise to an association between the marks"; (4) "that the association is likely to impair the distinctiveness of the famous mark or likely to harm the reputation of the famous mark." *Swatch, S.A. v. Beehive Wholesale, L.L.C.*, 888 F. Supp. 2d 738, 756–57 (E.D. Va. 2012) (citing *Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252, 264–65 (4th Cir. 2007)). Plaintiffs have satisfied those elements here.

First, Plaintiffs' incontestable registrations for the FARM BUREAU Marks on the Principal Register constitute conclusive evidence of the validity and distinctiveness of the marks and the exclusive rights to use the marks throughout the United States. *See* 15 U.S.C. § 1115(b). Further, Plaintiffs have also established the following: (1) as a result of their trademark

13

registrations as well as their long-standing use, commercial success, and widespread advertising and recognition, Plaintiffs' FARM BUREAU Marks are famous and distinctive (Dkt. No. 1 ¶ 23); (2) Defendants are making unauthorized commercial use of the FARM BUREAU Marks through registration in Virginia and use of the <vfbmins.com> website (*id.* ¶¶ 35 & 43); (3) Defendants use marks that are identical to, or incorporate in their entirety, Plaintiffs' FARM BUREAU Marks, which were famous prior to Defendants' first commercial use of the marks (*id.* ¶¶ 35, 55); and (4) Defendants' use of the FARM BUREAU Marks is likely to dilute the distinctive quality of Plaintiffs' famous FARM BUREAU Marks (*id.* ¶¶ 46, 56). Accordingly, Plaintiffs' complaint properly alleges the necessary elements for trademark dilution, and they are entitled to default judgment on their dilution claim. *See, e.g., Juul Labs, Inc. v. Zeigler*, No. 1:18-cv-1382 (CMH/TCB), 2019 WL 2707517, at *5 (E.D. Va. June 11, 2019) (granting default judgment on federal trademark dilution claim because complaint sufficiently identified plaintiff's mark's fame and that defendant's acts diluted plaintiff's famous trademark).

In summary, the undersigned recommends a ruling that Plaintiffs have stated a claim against Defendants on all six counts of the complaint.

## VIII.  Relief

In terms of the relief requested, the complaint and Plaintiff's Motion for Default Judgment seek a permanent injunction enjoining Defendants from (1) "using, registering, or seeking to register any name, mark, logo, trade name, company name, source identifier, or designation comprised of or containing" Plaintiff's marks or "any other confusingly similar name, mark, logo, trade name, company or corporate name, source identifier, or designation in any manner likely to cause confusion with the FARM BUREAU Marks or names, or to otherwise injure Farm Bureau and/or its reputation"; (2) "representing by any means whatsoever, directly or indirectly, that

14

Defendants, or any activities undertaken by Defendants, their services, and/or their activities originate from, are sponsored by, or are associated, affiliated, or connected in any way with Farm Bureau"; and (3) "assisting, aiding, or abetting any other person or entity in engaging in or performing any of the[se] activities." (Dkt. No. 1 at pp. 15–16.) Plaintiff also seeks an order requiring Defendants to "discontinue use of and destroy all goods, packaging, signage, advertisements, promotional materials, stationary, forms, and/or any other materials and things that contain or bear" its marks, to "disable the website at <vrbmins.com>" within 10 days, and for the Virginia State Corporation Commission to "'immediately involuntarily terminate, administratively dissolve, expunge, and revoke the corporate existence of the Unauthorized Virginia Farm Bureau Entities and remove the Unauthorized Virginia Farm Bureau Entities from the Clerk's Information System and all other publicly available databases.'" (Dkt. No. 22-1 at 5–6.) Upon review, the undersigned finds that Plaintiffs are entitled to the requested relief.

Section 1116(a) of the Lanham Act provides that district courts have the power to "grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office." 15 U.S.C. § 1116(a). In considering whether to grant a permanent injunction, courts consider whether: (1) the plaintiff has suffered irreparable harm; (2) there is no adequate remedy at law; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) it is in the public's interest to issue the injunction. *See eBay Inc. v. MercExchange*, 547 U.S. 388, 391 (2006). Courts routinely grant permanent injunctions on default judgment in trademark infringement cases. *See, e.g., Volkswagen Grp. of Am., Inc. v. Unincorporated Associations Identified in Schedule A*, 1:20-CV-01437-LO-MSN, 2021 WL 8444641, at *7 (E.D. Va. July 21, 2021), *report and*

15

*recommendation adopted*, No. 1:20-CV-1437, 2021 WL 8445261 (E.D. Va. Aug. 23, 2021) (entering default judgment on trademark infringement and granting permanent injunction).

Here, the undersigned recommends a finding that Plaintiffs have satisfied these elements. Specifically, as explained above, the well-pled factual allegations in Plaintiffs' complaint establish Defendants' liability for trademark infringement, unfair competition, and dilution, and the injuries to Plaintiff's reputation and goodwill caused by Defendants' knowing infringement of Plaintiff's marks constitutes irreparable harm. *See Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 552 (4th Cir. 1994) ("Moreover, the threat of . . . the potential loss of goodwill also support[s] a finding of irreparable harm."). Additionally, money damages are an inadequate remedy because they would not remedy Defendants' harm to Plaintiffs' reputation and goodwill, and there is a risk of harm from continued infringement. *See Toolchex, Inc. v. Trainor*, 3:08-CV-236, 2009 WL 2244486, at *2 (E.D. Va. July 24, 2009) ("Damages to reputation and goodwill are not items that are easily measured by a legal calculation of damages." (citing *Lone Star Steakhouse*, 43 F.3d at 939)). The balance of balance of equities also favors Plaintiffs, as a permanent injunction would merely require Defendants to cease their illegal conduct. *See GoSecure Inc. v. Bhandari*, 637 F. Supp. 3d 368, 380 (E.D. Va. 2022) ("The balance of equities fall in favor of Plaintiff because Defendant has not demonstrated a legitimate interest in continued use of the mark."). Finally, an injunction is in the public interest because it would prevent consumer confusion between Defendants' and Plaintiffs' marks and business names. *See Lone Star Steakhouse*, 43 F.3d at 939 ("[A]n injunction is the preferred remedy to insure that future violations will not occur, and an injunction in this case would serve the public interest by preventing future consumers from being misled."

(internal quotations and citations omitted)). Accordingly, all of the factors favor the issuance of a permanent injunction against Defendants.

## IX. Recommendation

For the reasons stated above, the undersigned U.S. Magistrate Judge recommends that the Court: (1) grant default judgment against Defendants on Counts 1 through 6 of the complaint; and (2) enter Plaintiff's proposed order (Dkt. No. 22-1) granting the requested injunctive relief.

## X. Notice

The parties are notified that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72(b), must be filed within fourteen (14) days of its service. Failure to timely object waives appellate review of the substance of this Report and Recommendation and any judgment or decision based on it.

Counsel for Plaintiffs is directed to serve a copy of this Report and Recommendation on Defendants in accordance with Virginia Code Ann. §§ 13.1-637(B), 12.1-19.1 and file a certificate of service showing the same.

**ENTERED** this 9th day of July, 2024.

/s/ LRV
Lindsey Robinson Vaala
United States Magistrate Judge

Alexandria, Virginia